Good morning. May it please the court, Gail Ivins appearing on behalf of petitioner appellant Reginald Elmore. Do you plan to reserve any time for a rebuttal? Best-case scenario, I do. Okay, just please remember to watch the clock. Thank you, Your Honor. I was thinking this morning about the fact that 40 years ago I was a third-year law student across the Bay, and this case really could have been the McBain competition question. Looked at one way, it's a very complicated case. It has lots of layers that we can talk about this morning. My position, obviously, is that looked at another way, it's very straightforward. There's a 924J conviction. 924C is part of that, which requires a very specific type of crime of violence. The specific crime of violence under the categorical approach is the counts, you know, the Vicar counts that were alleged in the indictment, which were specifically alleged by the government in the indictment to rest on California murder law. And there is nothing in the plea colloquy or any of the other Shepard documents that can be looked at that suggests that the plea was based on anything else. So at one point in the plea colloquy, I believe the government represents that they're going to prove killing with malice aforethought, or murder, which they define as killing with malice aforethought. And then I believe in Begay, we held that at least under the federal generic definition, killing with malice aforethought would qualify as a crime defined as including the least mens rea of depraved heart recklessness. But then we have California law, which seems to potentially have a different definition, statutory definition of malice aforethought. It seems to me that comes down to the crux of whether there's a categorical match. And then the question is, which definition are we looking at? So what's your best argument for why we should be looking at the state law definition instead of the federal? The entire prosecution of this case rested on the state law definition and included implied malice, and that can be seen both in the indictment. That's alleged in the indictment. That's alleged in the indictment, and it appears in all the jury instructions that were given for the co-defendants. The language, you can look at the record? I do, somewhere. CR 2274 at page 40 are the jury instructions for the co-defendants who are tried after the fact, and I can get you the one for the heard instructions that are referenced in their cert petition and in their appeal. So that was clearly that language, and I think that if the court to the language of this court's model jury instructions for second-degree murder under 18 U.S.C. 1111, you can see the difference in the language because 1111 doesn't have the sort of implied malice, natural consequences type of language. It has the very specific language that the en banc panel relied upon in Bigay 2 to find that it rose to the level of some kind of uber recklessness that got it out of Borden's holding and addressed the question that was left open in Borden. And so the best case, Verhoeff out of this court, had a very similar analysis with regard to Washington State's second-degree murder. California murder is very similar. I mean, the government has been relying on understanding of the structure of VICAR. It can't be federal murder because it's not on a federal enclave, right? They have to be able to be charged with that. So it has to be something that they could assumedly be charged with, and you can't, if you're just in a street gang in the Bay Area, not on a military base, you're not... You can't be charged with that. So they have to allege... So they at least... They have to allege a state predicate. That clearly has been the understanding for at least 20 years, that you have to allege a state murder in order to come within the VICAR statute. And then, this is why it gets complicated, and I understand it can be seen as complicated. There are a lot of cases that talk about how you analyze VICAR murder itself, standing alone, right? And as I said in my reply brief, we're not analyzing a VICAR conviction. We're analyzing VICAR as alleged as the predicate because he agreed under a predicate. But a VICAR conviction, whether a VICAR conviction itself has to meet any kind of categorical standard, is a separate question. I mean, it's clear that under 924C, you have to apply the categorical approach. The Supreme Court just did that in Taylor. It seems to me that the Fourth Circuit just has a different interpretation of the elements of VICAR. They have... They actually have cases holding that the state law has to prove both the elements of federal generic murder and the state law predicate. And if they're not an exact match, they have to prove all of them. I don't see any case law in the Ninth squarely holding that. The Fourth Circuit actually just, as the preamble to answering Your Honor's question, the Fourth Circuit has gone all over the map on this. I mean, the two cases in the 28J letter have bizarre, in my personal opinion, bizarre analyses of how you interpret, you know, VICAR, which includes the purpose element of VICAR can somehow satisfy the better than reckless intent requirement. And that's... I'm not familiar with that. I mean, I get it. I get that when you have a case where someone has a murder, you expect, as a layperson, that that's a crime of violence. I get that. But we're looking at something that's a very strict rule from the Supreme Court, despite Justice Thomas thinking we should do away with it. We have a very specific analysis with the crime of violence. And we've got, you know, the residual clause is gone. And so second degree murder under California law, which may have qualified under the residual clause, now has to qualify under the elements clause. Well, it seems to me that the interpretation of VICAR that the government is advocating for here, if they actually took it in a case where they were seeking a conviction for VICAR murder would make it more difficult for them to prove. So then, but it's not clear to me we've ever actually required what they're arguing we should require here in a question of categorical match. Right. To get back to your earlier question, I apologize for not getting back to it. I don't believe there is any published Ninth Circuit decision that discusses most of the issues that we have here today. And I don't think there's even an unpublished decision that really addresses this Fourth Circuit purpose. It has to also be federal generic murder. Now, the Second Circuit basically goes along with your approach, correct? Yes. Yes, Your Honor. The recent opinion by, I forget the name of the case, but by Judge Sullivan. If I didn't cite it, I apologize. And the Second Circuit previously had gone along with this approach. Yes. And the 11th. I think we have, I think a collection, possibly even the 6th, but I'd have to look back at my briefing to make sure I'm getting the correct circuits. But I think that's right. I'm not aware of a prior analysis. I do think if the government's going to have trouble getting convictions when they now have decided that this is what they want to do because they're going to have to prove up this, you know, depraved heart murder situation. And a lot of these gang prosecutions, going back to Shryock, don't, will not satisfy that standard. Do you want to reserve your time? I would like to reserve my time. Thank you, Your Honor. May, excuse me, may it please the Court, Sangeeta Rao on behalf of the United States. This Court should affirm the District Court's careful opinion, holding that Elmore's 924J conviction is supported by a valid crime of violence. That's second degree, by car second degree, non-felony murder. Now, there are a lot of procedural barriers to the defendant's claims and his claim fails on the merits. I'm going to focus on the merits here because time is short. The charged by car murder qualifies as a categorical crime of violence. The argument has three major steps. I'm going to say them quickly and then go back. Counsel, since your time is limited, I'll just cut to the chase. What can you tell us about the charging document or the plea colloquy that shows that the government actually represented that it could prove and the defendant admitted that the government could prove malice of worth under the federal definition? Sure. So, under the federal definition, the indictment pled that Elmore unlawfully and knowingly did murder Helton and Turner. That's in indictment count six and seven. So, that charges an intentional knowing murder. That was for purposes of the death penalty, correct? No. I'm sorry. Your Honor, that was in count six and seven. That was not in the death case. That's 924J. That's eight. I'm sorry. That was count eight. For count six and seven, which is the predicate, it charged a knowing murder. It didn't charge premeditation, and that's why it's not first degree murder. But it's based on, I'm sorry, I mixed up the counts, but counts six and seven reference or specifically allege murder under California Penal Code Section 187, 188, 189, and 31 to 33, correct? So, the Vicar murder counts charged in the language of the Vicar statute. So, they charged murder in violation of the California statutes. Our argument in line with the Fourth Circuit's argument is that the text of the Vicar statute requires both elements. It requires the generic federal offense. Okay. And we believe that's supported by Supreme Court case law. But if the case had gone to trial on these counts, you would have had to prove up the elements of 187, 188, or whatever. That's because the government believes both elements need to be proved. So, the government believes that both... So, at trial, you would have had to prove both murder under 1111 and murder under 187, 188, and 189? It's not 1111 by itself. We argue you have to prove federal generic murder, which we agree is equivalent, which we say is equivalent to 1111 murder. But it's not 1111 murder. Do you have any evidence that that's the position the government took in the related cases? I'm sorry, in the... In the related cases, the co-defending cases. So, the jury instructions, the defendant is bringing up the jury instructions in those related cases for the first time. But those jury instructions would have needed to allege the state law violation because the government's position is that you have to prove both. But I understand they would have needed to show the state. But your argument turns on also needing to show the federal version. Right. So, and I think in this case, specifying the mens rea of depraved heart recklessness or greater. So, is there anything you can point to in the record that shows that that's what the government either would have proven in this case or at least would have proven in the co-dependent cases? Your Honor, let's look at the indictment and the plea colloquy here. The plea colloquy here did not talk about California law at all. Now, there's not one word. It doesn't talk about implied malice. But he pled to count eight, correct? Yes. He pled guilty to count eight. And count eight, you have to go back, and then you have to go back. Do you have to, you know, do the analysis? Do you have to step back and then step down? You absolutely do. Yes. And because you have to go back, you have to look at the Vicar counts. Counts six and seven charged the Vicar offense by a generic federal murder and the violation. It did it by using the words of the Vicar statute. The words of the Vicar statute, they named the enumerated offense murder, maims, assaults in violation of State law. I mean, the problem here is it's not specified, right? So that's why we have different courts coming out different ways. But I think the problem here is that the government, as far as I can tell, never represented specifically that they were showing malice of forethought. They could prove malice of forethought as defined under the federal generic or statutory definition. They just referred to malice of forethought generally and referred specifically  that includes implied malice of forethought. So I think there's an ambiguity here. And I have the government hear you saying, well, now we think that Vicar should be interpreted more narrowly as requiring proof of both the federal generic crime and the State law predicate. But I'm looking for evidence that that's actually specifically and expressly the position that the government took either in this case or the co-defendant cases or really any Vicar case in the Ninth Circuit ever. Well, Your Honor, in terms of this case, it's up to the defendant to bring up these arguments. The defendant didn't raise the mens rea challenge below. So these issues are not teed up in exactly the way they would be otherwise because of the defendant's defaults, which this Court has to look very seriously at, as we said in our brief. But if you do just look at the records, you have an indictment that charges in the words of the Vicar statute. If you look at Nardello and Shidler for the Supreme Court — Let me ask you this. Which paragraphs are you specifically referring to? In the record, it's at 2er 196 to 197. Well, what paragraphs? Yes. I'm sorry. I left it behind. But it counts 6 and 7. It's the indictment counts for 6 and 7 that use just the words of the Vicar statute. And we think that the words of the Vicar statute — I'm trying to figure out which are the words of the Vicar statute that you're talking about, because all it says is the defendants, Elmore and Hurd, each aided and abetted by the other unlawfully and unknowingly did murder Adrian Helton in violation of California Penal Code sections 187, 188, 189, and 31 to 33. Right, Your Honor. So just if you look at Nardello, for example, the same structure. This is Nardello and the Supreme Court. There it said extortion, bribery, or arson in violation of the laws of the State. And the Supreme Court said that required both the proof of the generic crime and a violation of State law. The same thing happens in Shidler, where they're interpreting 1961, the RICO statute, extortion, which is chargeable under State law. Right. If we had — if we were — if this case was coming on the posture of what was the government required to convict, and you were taking the position that you're taking now, right, I think we would be squarely addressing that question. The problem is I don't see evidence that that was the position that the government took when it was seeking conviction of the defendant. But, Your Honor, for the plea colloquy, California murder isn't even mentioned. The 187, 188, 189, they're not mentioned. Implied malice isn't mentioned. It's charged in the plea colloquy. Right. But the cross-reference back is to the count in the charging document. It is, yes. And we've explained why the count in the charging document charges in the words of the statute. If you interpret the statute, that means that the indictment is the same. If I could point out two more cases, United States v. Atkins in this Court, and then it cites United States v. Joseph, which is an unpublished case. So in both those cases, this Court said that the charging in terms of the generic offense is enough. Now, while this Court doesn't decide the issues here, it shows that this Court has put emphasis on the generic element. Well, you said it, but we said it permissively. You can use the Federal generic, but you might want to use the State law predicate. So I don't see anything saying that the government always must prove all the elements of the Federal generic. And I don't see anything in this record indicating that that is, in fact, what the government was representing it was going to do here. Well, Atkins said that you needed to do the State law violation in that case because it was narrow. It was narrower. But there's nothing that this Court does need to — even if it hasn't been raised before, this Court needs to interpret the statute. There's not a default by the government below. It's up to the defendant to raise these challenges, especially on collateral review, the extraordinary remedy of collateral review. There's a very high burden, and the defendant has the burden to show prejudice. Yes. How does Pinkerton bear up on your analysis? Because opposing counsel relied on Pinkerton. Pinkerton doesn't at all. Under this Court's case law, United States v. Henry, Pinkerton liability is just another way of proving substantive guilt of the charge. So the charge here, the underlying charge, is substantive vicar murder, and that was proved. The defendant admitted the liability for that. So we know that that was the case. Either way, this Court believes that these issues were preserved. It still has to look at cause and prejudice. It has to look at actual innocence. For actual innocence, it needs to look at the more serious or equally serious charges. The Sixth Circuit just yesterday held that the Boozley exception for actual innocence extends to equally serious charges as well. The Seventh Circuit has already held that. I also don't believe that there's any circuit split on this. The Fourth Circuit has clearly held that you need a Federal generic offense element and a second — and another one. The Second Circuit has not held to the contrary. In cases where the government can rely on the State law element, courts rely on the State law element. If hypothetically we were to hold, you know, squarely that we agree with the Fourth Circuit's interpretation of vicar and that it requires the government to prove both the Federal generic and the State law predicate, the elements of both, and if they don't overlap, they have to prove all of them, would that have implications for past vicar convictions that didn't meet that standard? It would depend, Your Honor, on each — each case. You'd have to see whether the jury instructions were sufficient in other ways, whether the defendant preserved the challenges. So we're just looking at the statute and interpreting it how we think that the words require. And those — and just the words of the statute, especially when you see what the Supreme Court has done interpreting very structurally similar statutes, requires both elements. Okay. Well, okay then, if this Court adopts the Fourth Circuit position, I have a lot of work to do on my prior vicar murder cases going back 21 years. So that would be — that would be exciting for all of us, which I think will be a problem for the — the government going forward in every pending vicar murder case in the Ninth Circuit, certainly in California. I want to look briefly in rebuttal at this Court's model jury instructions for vicar, which very specifically use the or and say that what should be charged in the jury instruction when it says, you know, the defendant is charged in count blank with doing, committing, attempting, conspiring a crime of violence, specifically brackets specify the crime. And that's what the court — you know, the courts have been doing for all this time, is they specify the crime, and that is what the government does when they submit their proposed jury instructions. And this is the understanding, which is supported by the Shepard documents. I mean, I don't really need to go to the understanding to say that the language in the plea colloquy and the language in the indictment is based on California law, because it does not match the jury instruction for 1111. And I — yes. Let me just — I want you to finish your point. No, I was saying, I mean, I understand the government's argument that somehow there's an overlay of a generic crime of violence. Okay. But let me — you had referenced in your opening argument the subsequent cases that actually went to trial. Yes. And was there an instruction about generic murder? Not that I found. I did — I did that this morning again. And so I — you know, I'm in my hotel, and I'm not — you know, I don't want to represent that I did an exhaustive search, but there — Or an instruction regarding murder under 1111? The way the — the way the instructions were organized that I saw this morning again was that they basically had the jury instruction for murder for purposes of RICO, right? So for a RICO predicate, they said, this is what a murder is, and it used the California language. And in the proposed instructions, they referenced Calgic and — I mean, all of that, which is the normal thing that is done in these cases, and I have 20 seconds. But the — now I lost my thought. I'm sorry, Your Honor, I lost my thought. Calgic. I'll give you an extra minute to answer the question. Okay. Yeah, but I lost my thought, so now — I was curious whether or not they instructed on — on generic murder or murder under 1111. No, all that — all I saw that they did for the VICAR was reference back to the RICO instruction. So there wasn't a separate, like, VICAR murder instruction. It was, here's what VICAR is, and for purposes of determining what murder is, look back at our murder instruction for the RICO predicate. Which was based on California law. Yes. I — I mean, I see nothing in the record that suggests that the government's argument was extant at the time of any of the trials or pleas in this case. And I assume, then, that I also included the California definition of malice aforethought. Or implied malice, which is what was in the — yes, implied malice, which, as you know, I've got details in the brief about what implied malice under California law looks like, which is far broader than depraved heart. Thank you, Your Honor. Thank you.
judges: PAEZ, SUNG, Fitzwater